533 P.2d 711

**LAKE MEAD LAND AND WATER COMPANY, an Arizona Corporation, Marvin Lustiger and Thelma Lustiger, his wife, Appellants,**

v.

**PHOENIX TITLE AND TRUST COMPANY, a corporation, and Transamerica Title Insurance Company, a California Corporation, Appellees.**

**No. 1 CA–CIV 2227.**

Court of Appeals of Arizona, Division 1, Department A.

April 10, 1975.

Rehearing Denied May 21, 1975.

Review Denied June 24, 1975.

**404**

Dushoff & Sacks by Jay Dushoff, Phoenix, for appellants.

Powers, Boutell, Fannin & Kurn, P. A. by James P. Powers, Phoenix, for appellees.

## OPINION

DONOFRIO, Judge.

This is an appeal from an order and judgment entered in favor of the appellees (hereinafter referred to as the Title Co.) on a motion for summary judgment in the trial court. The issues involved in the present action and related issues arising from the same factual background have been the subject of litigation for several years. Appellants (hereinafter referred to as Lustiger) were the purchasers of some land in northwestern Arizona, and the Title Co. was involved in the transaction as escrow agent, title insurer, and mortgage collection trustee. Lustiger is now suing the Title Co. for breach of fiduciary duty, breach of contract, and certain theories of fraud arising out of its relationship with Lustiger. The issue before this Court is whether there were genuine issues as to any material facts; i. e., whether the trial court erred in awarding summary judgment to the Title Co.

The underlying facts in this case are the same as those involved in the case of Phoenix Title and Trust Company et al. v. Smith, 101 Ariz. 101, 416 P.2d 425 (1966). We will abbreviate the facts as they apply in the case at bar. Lustiger was the sixth or seventh purchaser in the chain of title of a portion of the land that is the basis of this action and of the Phoenix Title case, supra. In all of the transactions involving the subject land that are material to this case the Title Co. was involved in some way. Usually the Title Co. was the title insurer, escrow agent, and sometimes acted as a subdivision trustee for the buyer and seller. When the Smith family (see Phoenix Title case, supra) originally sold a certain interest in the subject land they reserved unto themselves, their heirs and assigns "all range use rights" to the land. It seems that the original sale had as its purpose the conveying of only the right to exchange the subject land (under the Taylor Grazing Act, 43 U.S.C. § 315 et seq.) for other federally owned land in Arizona. The original escrow instructions and their amendments in the original sale stated that the Smiths reserved the range use rights "forever", and that the conveyance was only of the "exchange rights" to the land. The Title Co. acted as escrow agent and title insurer in that transaction. Somehow the above restrictions were never properly recorded, and the reservation of "all range use rights" (omitting the word "forever") was the terminology picked up in subsequent deeds to the property. Eventually some of the property was sold in a subdivision trust and the Title Co. acted as the trustee. In a series of transactions in 1960 and 1961 Lustiger and his wife bought 13,940 acres of the subject land through the Lake Mead Land and Water Co. which Lustiger and his wife controlled. At about that same time Lustiger and others sued the Smiths in a quiet title action to determine the effect of the reservation of range use rights held by the Smiths. That suit was the Phoenix Title v. Smith case, supra. The outcome of the suit was that the reservation of "all range use rights" meant that all purchasers in the chain of title to the original Smith sale were charged with

notice that the reservation meant that Smith retained the surface use of the lands for cattle grazing forever. Thus, the lands could not be subdivided and developed, nor could they be fenced, nor anything done to interfere with the surface rights of the Smiths. However, prior to this final decision by the Arizona Supreme Court, Lustiger *had* subdivided portions of his property and sold various lots. After this decision he had to pay substantial sums of money to the Smiths to purchase the range use rights on the land he had already sold, as well as to purchase the range use rights on his other property so that he could continue with his lot sales program. This amounted to approximately $270,000 paid to the Smiths. Following the Supreme Court's decision Lustiger cross-claimed against the Title Co. for its alleged part in causing the loss which he sustained.

In his action against the Title Co. Lustiger alleged that the Title Co. was involved throughout all the transactions concerning the subject property and had certain information in its possession that it was under a duty to disclose to Lustiger; also that the Title Co., through its employees, made certain representations to Lustiger and his attorney, on which he relied, all to his subsequent loss. He alleges that if he had known of the original purpose of the Smith sale to the first purchaser (exchange rights *only*), and had known of the omitted word "forever", as well as other information known to the Title Co., he would not have entered into the agreement to purchase the land. The Title Co. alleges that it owed no duty to Lustiger that was not fulfilled, and that in any event the decision in the Phoenix Title Co. v. Smith case, supra, would act to bar Lustiger's claim against it.

■ Before we discuss the reasons why we think the trial court was in error in finding the existence of no material factual issues, we think that the effect of the decision in the Phoenix Title case, supra, as it relates to this action, deserves our atten-

tion. As we noted earlier, that case did hold that subsequent purchasers were charged with notice of the intent and purpose of the reservation, and that the vendors were entitled to exclusive use of the land for cattle grazing which right could not be interfered with by subsequent purchasers. *But* the instant case is between Lustiger and the Title Co., whereas they were on the same side in the other action. Here Lustiger is suing the Title Co. for breach of contract and breach of duties owed to him, and is alleging that were it not for representations made to him by the employees of the Title Co., and their failure to inform him and his attorney of vital facts involved, he would never have been a purchaser of the land and would never have found himself in the position of having to abide by the Supreme Court's decision in the Phoenix Title v. Smith case, supra. Therefore we hold that the decision in the case of Phoenix Title and Trust Company v. Smith, supra, in no way precludes Lustiger from pursuing this action against the Title Co.

We next address the issue of the propriety of the summary judgment award in the trial court. It is our opinion that there were many material factual issues involved in this case that should have been resolved by the trier of fact, and that the award of summary judgment in favor of the Title Co. under Rule 56, Arizona Rules of Civil Procedure, 16 A.R.S., was error. We do not mean to rule on the merits of this case, but only to hold that there exists a genuine issue as to material facts which precludes the granting of summary judgment.

■ In reviewing an award of summary judgment we are guided by the principle that the evidence must be viewed in the light most favorable to the losing party, and that he is to receive the benefit of all favorable inferences that may reasonably be drawn therefrom. Livingston v. Citizen's Utility, Inc., 107 Ariz. 62, 481 P.2d 855 (1971).

■ The complicated issues of fact in the instant case need to be more fully de-

veloped before a decision is made on the merits of the case. Involved here were sseventeen letters, eight escrow instructions, ten trust agreements, eleven depositions, and various other documents. No oral testimony was taken, but the *intent* of both Lustiger and the Title Co. in engaging in this transaction was at issue. Lustiger has alleged that Phoenix Title was negligent in its representations (or misrepresentations) to him as to the meaning and effect of the range use reservation; that it negligently or fraudulently omitted the word "forever" from certain recorded instruments, as well as reference to the fact that the transactions were for federal exchange purposes only. The Title Co. alleges, among other things, that it was not acting as a subdivision trustee for Lustiger, but he alleges that it was so acting. The parties also disagree as to whether the Title Co. agreed to deed out "subdividable and marketable" land from the trust of the Lustiger land purchase. Another material factual issue is whether Lustiger in fact did rely on any representations made to him by the Title Co., if such representations were made. We think that these are *all* material factual issues which should be determined by the trier of fact.

The Title Co. agrees in its brief that had Lustiger and his attorney known of the omitted word "forever" he would have acted differently toward the purchase of the land. We think that Lustiger should be given the opportunity to present his factual issues to the trier of fact to determine his charges of negligence, fraud, and breach of contract against the Title Co. By our holding in this case we express no opinion concerning the breach of any duty by the Title Co. that might be owed to Lustiger, but simply hold that this was a highly complex case involving many material factual issues and that the award by summary judgment was error.

Reversed and remanded.

OGG, P. J., and STEVENS, J., concur.